IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| MARY KATHRYN FUGATE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO.: 1:13cv740-WC |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

# MEMORANDUM OPINION

## I.   INTRODUCTION

Mary Kathryn Fugate filed an application for disability insurance benefits under Title II of the Social Security Act ("the Act"), 42 U.S.C. §§ 401 *et seq*,. Her application was denied at the initial administrative level. Plaintiff then requested and received a hearing before an Administrative Law Judge ("ALJ"). Following the hearing, the ALJ issued a decision in which the ALJ found Plaintiff not disabled from the alleged onset date of June 2, 2009, through the date of the decision. Plaintiff appealed to the Appeals Council, which rejected her request for review of the ALJ's decision. The ALJ's decision consequently became the final decision of the Commissioner of Social Security ("Commissioner").[1]  *See Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). The case

---

[1] Pursuant to the Social Security Independence and Program Improvements Act of 1994, Pub. L. No. 103-296, 108 Stat. 1464, the functions of the Secretary of Health and Human Services with respect to Social Security matters were transferred to the Commissioner of Social Security.

is now before the court for review under 42 U.S.C. § 405(g).  Pursuant to 28 U.S.C. § 636(c), both parties have consented to the conduct of all proceedings and entry of a final judgment by the undersigned United States Magistrate Judge.  Pl.'s Consent to Jurisdiction (Doc. 9); Def.'s Consent to Jurisdiction (Doc. 8).  Based on the court's review of the record and the briefs of the parties, the court AFFIRMS the decision of the Commissioner.

## II.     STANDARD OF REVIEW

Under 42 U.S.C. § 423(d)(1)(A), a person is entitled to benefits when the person is unable to

> engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).[2]

To make this determination, the Commissioner employs a five-step, sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920 (2011).

> (1) Is the person presently unemployed?
> (2) Is the person's impairment severe?
> (3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Pt. 404, Subpt. P, App. 1 [the Listing of Impairments]?
> (4) Is the person unable to perform his or her former occupation?
> (5) Is the person unable to perform any other work within the economy?

---

[2]  A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques.

2

> An affirmative answer to any of the above questions leads either to the next question, or, on steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled."

*McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986).[3]

The burden of proof rests on a claimant through Step 4. *See Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). A claimant establishes a *prima facie* case of qualifying disability once they have carried the burden of proof from Step 1 through Step 4. At Step 5, the burden shifts to the Commissioner, who must then show there are a significant number of jobs in the national economy the claimant can perform. *Id*.

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *Id*. at 1238-39. The RFC is what the claimant is still able to do despite the claimant's impairments and is based on all relevant medical and other evidence. *Id*. It may contain both exertional and nonexertional limitations. *Id*. at 1242-43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id*. at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines[4] ("grids") or call a vocational expert ("VE"). *Id*. at 1239-40.

The grids allow the ALJ to consider factors such as age, confinement to sedentary

---

[3] *McDaniel*, is a supplemental security income case (SSI). The same sequence applies to disability insurance benefits. Cases arising under Title II are appropriately cited as authority in Title XVI cases. *See, e.g.*, *Ware v. Schweiker*, 651 F.2d 408 (5th Cir. 1981).

[4] *See* 20 C.F.R. pt. 404 subpt. P, app. 2.

3

or light work, inability to speak English, educational deficiencies, and lack of job experience. Each factor can independently limit the number of jobs realistically available to an individual. *Phillips*, 357 F.3d at 1240. Combinations of these factors yield a statutorily-required finding of "Disabled" or "Not Disabled." *Id*.

The court's review of the Commissioner's decision is a limited one. This court must find the Commissioner's decision conclusive if it is supported by substantial evidence. 42 U.S.C. § 405(g); *Graham v. Apfel*, 129 F.3d 1420, 1422 (11th Cir. 1997). "Substantial evidence is more than a scintilla, but less than a preponderance. It is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004) ("Even if the evidence preponderates against the Commissioner's findings, [a reviewing court] must affirm if the decision reached is supported by substantial evidence."). A reviewing court may not look only to those parts of the record which support the decision of the ALJ, but instead must view the record in its entirety and take account of evidence which detracts from the evidence relied on by the ALJ. *Hillsman v. Bowen*, 804 F.2d 1179 (11th Cir. 1986).

> [The court must] . . . scrutinize the record in its entirety to determine the reasonableness of the [Commissioner's] . . . factual findings. . . . No similar presumption of validity attaches to the [Commissioner's] . . . legal conclusions, including determination of the proper standards to be applied in evaluating claims.

*Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

### III.   ADMINISTRATIVE PROCEEDINGS

Plaintiff was forty-nine years old at the time of the hearing before the ALJ, and had completed the twelfth grade.  Tr. 41.  Following the administrative hearing and employing the five-step process, the ALJ found at Step One that Plaintiff "has not engaged in substantial gainful activity since June 2, 2009, the alleged onset date."  Tr. 24.  At Step Two, the ALJ found that Plaintiff suffers from severe impairments of "Meniere's disease, tinnitus, Eustachian tube dysfunction, and anxiety."  *Id.*  At Step Three, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments[.]"  *Id.*  Next, the ALJ articulated Plaintiff's RFC as follows:

> The claimant has the residual functional capacity to perform less than the full range of light work as defined in 20 C.F.R. § 404.1567(b).  The claimant can lift and carry ten pounds frequently and twenty pounds occasionally; sit, stand and walk for six hours each during an eight-hour workday; frequently use the upper and lower extremities for pushing and pulling; occasionally bend, balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; precluded from climbing ladders, ropes and scaffolds; frequently reach, handle, finger and feel; precluded from exposure to extreme heat and cold, vibration, unprotected heights, dangerous machinery, driving automotive equipment and work around large bodies of water; able to perform simple routine tasks involving no more than simple, short instructions; and able to sustain concentration and attention for two hour periods.

*Id.* at 26.  After consulting the VE, the ALJ concluded at Step Four that Plaintiff "is capable of performing past relevant work as a housekeeper and mail clerk."  *Id.* at 31.  Accordingly, the ALJ determined that Plaintiff "has not been under a disability, as

defined in the Social Security Act, from June 2, 2009, through the date of th[e] decision." *Id.*

## IV. PLAINTIFF'S CLAIMS

Plaintiff presents two issues for this court's consideration in review of the ALJ's decision: (1) whether "[t]he Commissioner's decision should be reversed because the ALJ's finding that Ms. Fugate is capable of performing less than a full range of light work is not supported by substantial evidence[;]" and (2) whether "[t]he Commissioner's decision should be reversed because the ALJ failed to properly consider Ms. Fugate's credibility." Pl.'s Br. (Doc. 11) at 6. The court will address each argument in turn.

## V. DISCUSSION

### A. *Whether the ALJ's RFC finding is supported by substantial evidence.*

Plaintiff first argues that "the ALJ's RFC assessment is not supported by substantial evidence regarding [Plaintiff's] abilities and limitations due to her impairments" because "the record does not contain any physical RFC assessments completed by a treating or examining physician which support the ALJ's RFC assessment." Pl.'s Br. (Doc. 11) at 6. Indeed, plaintiff asserts, "there are no physical RFC assessments completed by a treating or examining physician in the entire record." *Id.*

Plaintiff appears to predicate her argument that the ALJ's RFC finding is not supported by substantial evidence due to the lack of any supporting physician opinion on

her mistaken belief that the ALJ's RFC determination somehow constitutes a medical judgment.  Relying on Social Security Ruling ("SSR") 83-10, Plaintiff describes RFC as a "'a medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s)."  Pl.'s Br. (Doc. 11) at 7.  Thus, plaintiff concludes, "the ALJ is required to have evidence from a physician which supports her RFC assessment given that it is by definition "'a medical assessment.'"  *Id.*  However, a subsequent SSR makes clear that "some issues are not medical issues regarding the nature and severity of an individual's impairment(s) but are administrative findings that are dispositive of a case[.]"  SSR 96-5p, 1996 WL 374183, *2.  One example of such an "administrative finding" is "[w]hat an individual's RFC is[.]"  *Id.*  Accordingly, the determination of Plaintiff's RFC was not a "'medical assessment'" as portrayed by Plaintiff.  Rather, it was an administrative determination which, pursuant to governing law, was solely the province of the ALJ.  *See, e.g., Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) (unpublished decision) ("Indeed, the pertinent regulations state that the ALJ has the responsibility for determining a claimant's RFC.").

The law requires only that the ALJ's RFC determination be supported by substantial evidence in the record.  There is no requirement that the ALJ's RFC determination be equivalent to, or supported by, the opinion of a physician.  *See Green v. Soc. Sec. Admin.*, 223 F. App'x 915, 923-24 (11th Cir. 2007) (unpublished) (holding that

the ALJ did not err in articulating RFC which conflicted with claimant's treating physician's RFC assessment and which, while supported by other evidence in the record, was not supported by another physician's RFC assessment); *see also Langley v. Astrue*, 777 F. Supp. 2d 1250, 1258 (N.D. Ala. 2011) ("Therefore, the court concludes that the law of this Circuit does not require[] an RFC from a physician."). Thus, where the ALJ's RFC determination is supported by substantial evidence in the record, the lack of any corroborating physician-completed RFC assessment will not render the ALJ's RFC assessment unsupported by substantial evidence.

In this case, the ALJ's RFC findings are supported by substantial evidence in the record. The ALJ reviewed Plaintiff's medical records, her hearing testimony, and other evidence and determined that, considering her treatment history for her various symptoms, her "demonstrated capacity to function [is] inconsistent with her allegations." Tr. 28. As to medical opinion about Plaintiff's physical limitations, the ALJ afforded "good weight" to the opinion of Dr. Langford, a non-examining reviewing physician, who surmised that Plaintiff is capable of less than the full range of light work with seizure precautions. *See* Tr. 276 & 283. Nevertheless, the ALJ found that limitations beyond those articulated by Dr. Langford were necessary in light of additional evidence adduced at the hearing level. *See* Tr. 29. Notably, Plaintiff points to no evidence in the record which indicates that her RFC should be assessed at any level below that found by the ALJ. While Plaintiff notes the various records establishing that she "has sought

treatment for Meniere's disease, tinnitus, and Eustachian tube dysfunction with symptoms including dizziness and vertigo," Pl.'s Br. (Doc. 11) at 10 (listing records of treatment), the ALJ reviewed these records and clearly considered them in formulating her RFC. *See* Tr. 28. As such, the court finds that Plaintiff has failed to show that the ALJ's decision was not supported by substantial evidence.

Plaintiff also appears to argue that, in concert with the ALJ's failure to obtain and rely upon any physician's assessment of Plaintiff's RFC, the ALJ erroneously afforded some weight to the RFC assessment completed by a state agency Single Decision Maker ("SDM"). Pl.'s Br. (Doc. 11) at 8-9. The ALJ did not expressly afford any weight to the SDM's assessment. Nevertheless, plaintiff infers such improper reliance because some of the limitations articulated by the ALJ coincide with those of the SDM. *Compare* Tr. 26 (ALJ's RFC determination) *with* Tr. 64-71 (SDM Physical RFC Assessment). However, it is apparent that the ALJ did not adopt wholesale the SDM's findings as its own. For example, while the SDM found only that Plaintiff should not be subjected to "concentrated exposure" to extreme heat, extreme cold, and vibration, *see* Tr. 68, the ALJ found that Plaintiff was precluded from any such exposures. Tr. 26. In addition, the ALJ included limitations related to Plaintiff's mental functioning which are not included in the SDM's assessment. Tr. 26. In sum, considering that the ALJ properly evaluated Plaintiff's medical evidence, gave "good," but limited weight to Dr. Langford's opinion, did not expressly assign any weight to the SDM's opinion in formulating Plaintiff's RFC

and indeed included more restrictive limitations than did the SDM in some instances, and that Plaintiff has not identified any evidence in the record which conflicts with the ALJ's findings, the court simply cannot conclude that any similarity between the ALJ's RFC and the findings of the agency SDM is more than coincidence or that any reliance by the ALJ was not harmless error. *See Cooper v. Comm'r of Soc. Sec.*, 521 F. App'x 803, 807 (11th Cir. 2013) (unpublished decision) (finding any reliance by ALJ on SDM opinion, which ALJ had mistakenly credited as physician opinion, "was harmless because the ALJ stated that he considered *all* of the evidence in the record . . . and there is nothing in the record to indicate that the opinion of the SDM was anything more than cumulative of other evidence, let alone dispositive").

Plaintiff's final argument in support of this issue is her contention that "[i]f the ALJ thought [Plaintiff] capable of performing 'less than the full range of light work,' the ALJ had a duty to order a physical consultative exam that would provide such information[,]" rather than "merely speculat[ing] as to [Plaintiff's] physical abilities." Pl.'s Br. (Doc. 11) at 10. However, Plaintiff had the burden of proving her disability before the ALJ. 20 C.F.R. § 404.1512(a). It was incumbent on Plaintiff to "furnish medical evidence" establishing her claim of disability. *Id.* The ALJ is not required to order a consultative examination where the evidence in the record is sufficient to support the ALJ's disability determination. *See Good v. Astrue*, 240 F. App'x 399, 404 (11th Cir. 2007) (unpublished decision) (citing *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir.

10

1999)). As set forth above, considering that the evidence in the record before the ALJ was sufficient to render a determination, and further considering that the there was no recommendation for a consultative examination by the reviewing physician or any other physician, the ALJ did not err in failing to order such a consultative examination. *Id.*

Plaintiff's argument that the ALJ's RFC determination was not supported by substantial evidence is without merit.

### B.     *The ALJ's consideration of Plaintiff's credibility.*

Plaintiff argues that "the ALJ failed to properly consider [Plaintiff]'s credibility" because the ALJ impermissibly found that (1) Plaintiff's "participation in her activities of daily living disqualifies her from disability," and (2) Plaintiff's "alleged lack of treatment disqualifies her from disability." Pl.'s Br. (Doc. 11) at 10.

As to Plaintiff's argument about the ALJ's reliance on her activities of daily living in finding her not disabled, Plaintiff asserts that the ALJ failed "to consider the entire record when evaluating [Plaintiff's] testimony[,]" and that Plaintiff's "activities of daily living are far more limited than the ALJ purported and the ALJ failed in her duty to discuss and consider the entire evidence of record." *Id.* at 11-12. The ALJ discussed Plaintiff's activities of daily living and the limitations caused by her impairments as follows:

> In activities of daily living, the claimant has mild restriction. The claimant states that she remains able to maintain personal care without significant problems. She remains able to prepare quick and simple meals weekly, and performs light housecleaning and laundry. She goes outside

on a daily basis, shops for necessary items, visits with people, and attends church []. However, the claimant testified that her daily activities remain severely limited and that her ability to do housework or any kind of normal activities is limited. She remains unable to read, but would watched [sic] some television without anything with fast movements. She continues to perform some household chores, watches television, is able to tend to personal care, attends church, and is able to use a computer to help her husband with his business. While the claimant's daily activities may be limited at times, her capacity to perform activities of daily living do not appear to have been more than mildly limited.
. . .

Not only was the claimant's ability to work limited, but her ability to perform activities of daily living is also alleged to be limited. The claimant has no problems maintaining personal care. She remains able to prepare her own meals that were generally quick and simple. She also performs light housecleaning and laundry. She remains able to go outside daily. However, she is unable to go to the store by herself due to dizziness spells. She shops for necessities, and remains able to handle money. Hobbies and interests once included yard work and flower gardens, but she is no longer able to engage in these interests. Social activities included spending time with others on the phone, visiting in person, and attending church regularly every week. She alleges that her condition affects her exertional and postural capacity to squat, bend, stand, walk, and climb stairs, which were limited due to her balance and dizziness. She remained able to pay attention for a regular period and able to follow instructions[]. The evidence supports underlying medically determinable impairments significantly limiting the claimant's capacity to function. However, the evidence fails to support the claimant's condition is limited to the extent alleged.
. . .

The claimant alleges that the [sic] she spent her day lying flat to alleviate her vertigo symptoms and that she has severe balance problems further limiting her ability to perform even basic tasks. However, the claimant acknowledges that she still drives and performs some household chores. Despite her complaints that use of television and computers, as well as visualizing movement exacerbates her dizziness, she tried to help with paperwork for her husband's business with limited use of the computer. She does watch television, but does not watch anything with fast movement. She attends to personal needs, performs some household tasks, leaves the house daily, attends church regularly, and additionally has made

>efforts to assist her husband in his business activities. There have been periods during the relevant period in which the claimant's activities of daily living have been significantly limited. However, the activities in which she remains able to engage and the objective medical evidence fails to support her capacity to perform activities of daily living are limited to the extent alleged []. The claimant's activities of daily living are consistent with the residual functional capacity assessment as determined above.

Tr. 25, 27, & 30.

As can be seen from the more comprehensive review of the ALJ's opinion excerpted above, the ALJ acknowledged those portions of Plaintiff's testimony in which she conveyed severe limitations on her ability to conduct ordinary activities, but the ALJ nevertheless concluded that, considering the medical evidence and Plaintiff's other testimony about her day-do-day activities, Plaintiff's testimony was not credible to the extent she alleged limitations exceeding those set forth in the RFC. Thus, it cannot be fairly argued, as Plaintiff does in her brief, *see* Pl.'s Br. (Doc. 11) at 11-12, that the ALJ failed to consider or discuss the more limiting components of Plaintiff's testimony. Moreover, Plaintiff points to nothing in the ALJ's review of her testimony which is contradicted by any evidence in the record or is not supported by substantial evidence. Plaintiff indeed did testify that she is able to perform several ordinary tasks like housework, preparing meals, driving, computer work, and personal care. The ALJ simply found that, to the extent Plaintiff alleged a more than mild restriction on her ability to perform these tasks, her testimony was not credible. As a general rule, "credibility determinations are for the ALJ." *Wilson v. Heckler*, 734 F.2d 513, 517 (11th

Cir. 1984). Because the ALJ's specific findings about Plaintiff's activities of daily living are supported by substantial evidence, the court cannot find that the ALJ's credibility determination is not supported by substantial evidence.

Plaintiff also argues that "the ALJ's enunciation of [Plaintiff's] alleged lack of treatment is impermissible as a basis to discredit her disability status." Pl.'s Br. (Doc. 11) at 12. However, Plaintiff appears to mistake the extent to which the ALJ relied upon any perceived lack of effort to obtain treatment as a factor in its analysis. The ALJ found that, with respect to Plaintiff's impairments related to her Meniere's disease, tinnitus, and Eustachian tube dysfunction, she had "undergone repeated surgical intervention, seeking medical treatment with a frequency that appears to support her allegations." Tr. 30. It was only "treatment of the claimant's anxiety disorder" which the ALJ found to be "conservative in nature, without any referrals or treatment sought for formal psychiatric care. The claimant's anxiety remains treated by her medical physician and has not entailed more than medications prescribed." *Id.* Thus, Plaintiff appears to confuse the ALJ's findings when she asserts that "[a]s to the allegation of a lack of treatment, on several occasions, [Plaintiff] has sought treatment for Meniere's disease, tinnitus, and Eustachian tube dysfunction with symptoms including dizziness and vertigo." Pl.'s Br. (Doc. 11) at 13. The ALJ acknowledged Plaintiff's efforts to obtain treatment for these conditions and therefore in no way found any purported lack of treatment of these impairments relevant in its analysis of her disability claim.

Plaintiff also appears to argue that the ALJ somehow erred in noting her limited treatment for her anxiety disorder because "on multiple occasions, [Plaintiff] has sought treatment for her anxiety including panic attacks. During these visits, Ms. Powell [sic] was prescribed medications for her anxiety including Clonazepam, Diazide, and Xanax." Pl.'s Br. (Doc. 11) at 13. However, the ALJ was fully aware of Plaintiff's efforts to obtain treatment for her anxiety:

> The claimant has a history of treatment for her anxiety by her treating physician. However, the prescribed course of treatment has been limited to medications prescribed by her physician and has not included a referral or treatment requested from a mental health professional. Her treatment history does not support a course of treatment consistent with significant exacerbations in her mental capacity.

Tr. 26. Thus, the ALJ properly recognized the scope of Plaintiff's efforts to obtain treatment for her anxiety. Plaintiff points to nothing in the record which indicates that the ALJ erred in his assessment of the extent of her efforts to obtain treatment for her anxiety. Moreover, the ALJ did not err in finding that Plaintiff's treating physician's conservative approach to treating her anxiety indicates that the impairment does not significantly limit her mental or physical functioning. *See, e.g., Sheldon v. Astrue*, 268 F. App'x 871, 872 (11th Cir. 2008) (citing *Wolfe v. Chater*, 86 F.3d 1072, 1078 (11th Cir. 1996) ("A doctor's conservative medical treatment for a particular condition tends to negate a claim of disability.").

The ALJ did not err in its assessment of Plaintiff's credibility for purposes of formulating her RFC.

## V. CONCLUSION

The court has carefully and independently reviewed the record and concludes that, for the reasons given above, the decision of the Commissioner is AFFIRMED. A separate judgment will issue.

Done this 26th day of September, 2014.

/s/ Wallace Capel, Jr.
WALLACE CAPEL, JR.
UNITED STATES MAGISTRATE JUDGE